Fred Lynn WARD and Gloria D. WARD, His Wife *v.*
UNION LIFE INSURANCE COMPANY d/b/a
UNITED EMPLOYERS FEDERATION, INC. and
Dee WARREN

CA 82-380                                      653 S.W.2d 153

Court of Appeals of Arkansas
Opinion delivered July 6, 1983

*Guy H. "Mutt" Jones, Phil Stratton* and *Casey Jones,* by: *Phil Stratton,* for appellants.

*Davidson, Horne, Hollingsworth, Arnold & Grobmyer,* for appellees.

DONALD L. CORBIN, Judge. Appellants, Fred Lynn Ward and his wife, Gloria D. Ward, on December 5, 1978, applied to appellee, Union Life Insurance Company, for a health insurance policy. The policy application form contained the following language:

> I hereby represent that on this date I and all of the dependents for whom I am requesting coverage are in good and sound health, and that in the past two years have not consulted with or been treated by a doctor for any of the following: heart trouble, high blood pressure, kidney disease, diabetes, disease of the lungs, cancer, or any mental or nervous or female disorder.

Appellants were instructed to list any other medical treatment received during the last two years to which they responded:

| Name | Disease or Injury | Date | Name and Address of Physician and Hospital |
|---|---|---|---|
| Gloria | Child Birth | 7/27/77 | Dr. D. B. Allen Doctors Hospital Doctors Building Little Rock |

The policy became effective January 1, 1979.

On June 11, 1979, appellants submitted a claim for insurance benefits for drug expenditures incurred between January and May, 1979. Appellee, upon investigation, determined that appellant Gloria Ward had, within twenty-four months prior to application, been treated by Dr. William Roberts for severe psychoneurosis and alcoholism and that Dr. D. B. Allen had treated her for disorders associated with her menstrual period and breasts.

In July, 1979, appellee notified appellants that their policy of insurance was rescinded for failure to disclose past medical history in their application for insurance. Appellee tendered a refund check to the Wards for the premiums paid less any claim paid to date. On August 3, 1979, appellee returned a premium check sent by appellants on July 30, 1979, and again advised appellants that the insurance policy had been terminated. On September 2, 1979, appellant Gloria Ward gave birth to a son, Wesley Frank Ward. Complications arose out of the delivery which resulted in medical expenses on behalf of Gloria Ward and her son in the sum of $7,094.00. Appellants filed claims with appellee for medical and hospital costs they incurred in connection with the childbirth and for resulting complications which appellee refused to pay. Appellant Gloria Ward filed suit in her own behalf and appellant Frank Lynn Ward filed suit on behalf of his infant son, each seeking to recover medical costs, statutory penalties and attorney's fees.

Appellants accepted appellee's computation of coverage at trial in the sum of $7,094.00 in the event cancellation of the policy did not obtain court approval. The court overruled appellee's motion for summary judgment and proceeded to hear the case on its merits. Appellants contended at trial that appellee was not entitled to the good faith defense which it had affirmatively pled. The trial court dismissed appellants' complaint.

Appellants' first point for reversal concerns testimony and medical reports brought into evidence by appellee's underwriter which the trial court permitted over appellants'

specific objection. Appellee had pled the affirmative defense of good faith contained in Ark. Stat. Ann. § 66-3208 (1) (c) (Repl. 1980), and pursuant to undertaking the burden of proof imposed upon it, appellee called its underwriter to testify to the contents of medical reports from Dr. William Roberts and Dr. D. B. Allen. Appellants objected on the basis that such testimony was hearsay and inadmissible. The court ruled that Dr. Allen's report was admissible as an exception to the hearsay rule under Uniform Evidence Rule 803 (6). Dr. Allen's report was admitted as an exhibit to appellee's underwriter's testimony. Dr. Allen's report reflected that he had treated appellant Gloria Ward between April, 1978, and December, 1978, for phenothiaozine amenorrhea and galactorrhea.

Uniform Evidence Rule 803 (6) provides as follows:

Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or disagnoses [diagnoses], made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Appellee argues that the medical report was a part of records compiled by the underwriter in the course of appellee's regular business activities in investigating claims and was clearly admissible under the above exception to hearsay. Appellee goes on to argue that if the report was not admissible as an exception to the hearsay rule, its introduction into evidence was cumulative and not prejudicial to appellants.

It is clear that the trial court relied upon the report from Dr. Allen and the underwriter's testimony as reflected by the court's finding as follows:

> Upon receipt of this claim Union Life investigated the charges contained in the claim, due to the large number of drug charges, and in the course of such investigation determined, and this Court finds, that within the last twenty-four months prior to the date of the application Gloria Ward was treated and medication prescribed by Dr. Roberts for psychoneurosis and ethanolism (alcoholism) among other medical problems, and was treated by Dr. Allen for disorders associated with her menstrual period and breasts.

It is well-settled that the trial judge has the discretion to determine the qualification of witnesses and the admissibility of evidence. We do not reverse the trial court's ruling absent a showing that it was an abuse of discretion. Error is presumed to be prejudicial unless it is demonstrated to be otherwise or is manifestly not prejudicial. *Buckeye Cellulose* v. *Vandament,* 256 Ark. 434, 508 S.W.2d 49 (1974).

We hold that the acceptance of the testimony and medical reports offered by appellee's underwriter was an abuse of the trial court's discretion and, accordingly, we reverse and remand for a new trial. In *Hanna Lumber Co.* v. *Neff Design Builder,* 265 Ark. 462, 579 S.W.2d 95 (1979), a case involving a suit to recover damages allegedly caused by the failure of a truss system manufactured by appellant, Uniform Evidence Rule 803 (6) was relied upon by appellee at trial for admission of checks with notations which violated the hearsay rule of evidence. The Court there agreed with the appellant that the checks constituted a violation of the hearsay rule and that they did not fall within the business records exception. In so holding, the Supreme Court stated: "There was no showing that the notations were made at the time the checks were written or that it was a regular practice of the business to make such notations. Appellee's testimony as to his damages was based upon these notations; . . . ". In *Parker* v. *State,* 270 Ark. 897, 606 S.W.2d 746 (1980), appellant argued for reversal that certain items were im-

properly introduced into the record. The Court discussed the application of the business records exception and determined that the exhibits prepared by the witness were not shown to have been kept in the regular course of business and that they were prepared for a specific purpose. It concluded that there was no foundation to prove the records were kept in the regular course of business. See also *Lee* v. *State*, 266 Ark. 870, 587 S.W.2d 78 (1979), *Walker* v. *Walker*, 262 Ark. 648, 559 S.W.2d 716 (1978).

The records and testimony in the instant case offered by appellee's underwriter were hearsay and not admissible under Rule 803 (6) as a record maintained in the course of a regularly conducted business activity. The reports were not compiled in appellee's normal course of business but rather for the specific purpose of investigating appellants' claim submitted to appellee on June 11, 1979, which does not come within the perimeters of the business records exception. We cannot say with confidence that the error by the trial court in accepting this evidence as an exception to the hearsay rule was not prejudicial.

Appellant's second point for reversal is that the trial court erred in applying the good faith defense absent a showing that the alleged omissions or misstatements by appellants had some logical bearing upon the risk assumed. The trial court made a specific finding in applying the good faith defense contained in Ark. Stat. Ann. § 66-3208 (1) (c) (Repl. 1980), to the effect that the failure of appellants to disclose Gloria Ward's prior medical history in the application for insurance were misrepresentations and omissions which were material to the risk insured under the policy and assumed by appellee. The court went on to find that, "but for such material omissions and representations, appellee would not have issued the policy to appellants."

Ark. Stat. Ann. § 66-3208 (1) (Repl. 1980), of the Insurance Code provides in part:

All statements in any application for a life or disability insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or

annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either: . . .

(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

The insurer must show a causal relationship between an applicant's misrepresentation and the eventual loss. Fairness and reason support the view that a causal connection should be essential. *National Old Line Ins. Co. v. People,* 256 Ark. 137, 506 S.W.2d 128 (1974).

We believe that this point is closely connected with appellants' first point upon which we have reversed and remanded. The evidence which the trial court erroneously allowed was offered by appellee in its attempt to meet its burden of proof in establishing the good faith defense. Appellee in part relied upon this objectionable testimony and evidence to establish a causal connection between appellants' alleged misrepresentations and their eventual claims. Therefore, we do not find it necessary to dispose of this issue since we reverse and remand on appellants' first point.

Reversed and remanded for a new trial.